# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# KNOXVILLE DIVISION

| | |
|---|---|
| CITY OF KNOXVILLE, TENNESSEE, individually and on behalf of all others similarly situated,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>NETFLIX, INC., and HULU, LLC,<br><br>　　　　　Defendants. | Case No.:<br><br>Judge:<br><br><br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff City of Knoxville ("Plaintiff" or "Knoxville"), individually and on behalf of all others similarly situated (the "Class," as more fully defined below), brings this class action against Defendants Netflix, Inc. and Hulu, LLC (collectively "Defendants"). Plaintiff makes the following allegations upon personal knowledge as to its own acts, upon information and belief and its attorneys' investigation as to all other matters, and alleges as follows:

### INTRODUCTION

1. Defendants provide video service in Tennessee municipalities and counties. When doing so, they use wireline facilities (*i.e.*, broadband wireline facilities) located at least in part in public rights-of-way.

2. Accordingly, Defendants should be and are required by the Competitive Cable and Video Service Act to pay each of those municipalities and/or counties a video service provider fee of up to 5% percent of their gross revenue, as derived from their providing video service in that municipality and/or county.

3. Defendants have failed to pay the required fee, necessitating this lawsuit, and entitling Plaintiff and the putative class to the relief requested herein.

## PARTIES

4. Plaintiff is a lawfully existing Tennessee municipal corporation located in Knox County, Tennessee.

5. Defendant Netflix, Inc. ("Netflix") is a Delaware corporation, headquartered in Los Gatos, California. Netflix's primary business is its video service, which offers online streaming of a library of films and television programs, as well as the distribution and production of original films and television series. Netflix does business in Knoxville, Tennessee, and has done so at all times relevant to this action.

6. Defendant Hulu, LLC ("Hulu") is a Delaware limited liability company, headquartered in Santa Monica, California. Hulu's primary business is its video service, which offers online streaming of live video programming and a library of films and television programs, as well as the distribution and production of original films and television series. Hulu does business in Knoxville, Tennessee, and has done so at all times relevant to this action.

## JURISDICTION AND VENUE

7. This Court has original jurisdiction over this action under 28 U.S.C. § 1332(a). Defendants are citizens of a state different from that of Plaintiff and all of the other Class members and the amount in controversy exceeds $75,000, exclusive of interest and costs.

8. Venue is proper in this District, and this Court has personal jurisdiction over Defendants, pursuant to 18 U.S.C. § 1965(a) and 28 U.S.C. § 1391(b), because a substantial part of the events giving rise to the claims occurred in this District, and because Defendants "transact

affairs" in this District; each Defendant continuously and systematically engaged in and continues to engage in business in this District.

## FACTUAL ALLEGATIONS

9. Defendants provide video service to their subscribers to view television shows, movies, documentaries, and other programming.[1] They compete with other video service providers,[2] offering video programming[3] that is comparable to that provided by cable companies and television-broadcast stations.

10. Customers view Netflix's and Hulu's video programming—such as television shows, movies, and documentaries—using an Internet-connected device. Internet-connected devices are electronic devices that have software enabling them to stream Defendants' video programming, including smart televisions, streaming media players like Roku or Apple TV, smartphones, tablets, video game consoles, set-top boxes from cable and satellite providers, Blu-ray players, and personal computers.

11. When a subscriber wants to watch Netflix or Hulu video programming, he or she uses an Internet-connected device to send a request to the Internet-service provider. The Internet-service provider then forwards that request to Netflix's and Hulu's dedicated Internet servers,

---

[1] "Video service" means the provision of video programming through wireline facilities located, at least in part, in the public rights-of-way without regard to delivery technology, including Internet protocol technology or any other technology. "Video service" does not include any video programming provided by a commercial mobile service provider as defined in 47 U.S.C. § 332(d) or video programming provided as part of, and via, a service that enables end users to access content, information, electronic mail or other services offered over the public Internet. "Video service" does not include cable service. *See* Tenn. Code. Ann. § 7-59-303(19).

[2] "Video service provider" means a provider of video service. *See* Tenn. Code Ann. § 7-59-303(20).

[3] "Video programming" means programming provided by, or generally considered comparable to programming provided by a television broadcast station, as set forth in 47 U.S.C. § 522(20). *See* Tenn. Code Ann. § 7-59-303(18).

which, in turn, provide a response. This response is then relayed back to the subscriber's device, and Netflix and Hulu deliver the video programming via Internet protocol technology (*i.e.*, broadband wireline facilities located at least in part in public rights-of-way).

12. During the relevant time period, Netflix has used a content delivery network called Netflix Open Connect to deliver 100% of its video traffic to its subscribers. When a Netflix subscriber wants to view Netflix programming, the subscriber's Internet service provider will connect the subscriber to the closest Netflix Open Connect server offering the fastest speeds and best video quality.

13. According to Netflix, that means that most of its subscribers receive Netflix's video programming from servers either inside of, or directly connected to, the subscriber's Internet service provider's network within their local region. Netflix has "end-to-end" control of its entire Open Connect system, including any servers located in Knoxville and/or other Tennessee municipalities and/or counties.

14. Similar to Netflix, when a Hulu subscriber wants to view Hulu's video programming, the subscriber's Internet service provider will connect the subscriber to the Hulu server. Hulu receives the directive and checks the subscriber's entitlement, the location, and the content availability. It then delivers the program through the Internet to the subscriber's Internet-connected device.

15. Defendants provide video programming generally considered comparable to programming provided by a television broadcast station, as set forth in 47 U.S.C. § 522(20). *See* Tenn. Code Ann. § 7-59-303(18).

16. Defendants' subscribers typically use a broadband Internet connection, such as DSL or fiber optic cable to receive Defendants' programming. In Knoxville, common providers

of broadband internet include AT&T and Spectrum Broadband. These broadband Internet connections rely upon wireline facilities located in whole or in part in the public right(s)-of-way to deliver Internet service to subscribers. That means that Defendants operate and provide their video service to Defendants' subscribers through wireline facilities located, at least in part, in the public right-of-way.

17. Nothing in the Competitive Cable and Video Service Act requires Defendants to construct, own or operate these wireline facilities. Those wireline facilities can be owned and operated by a third party.

18. In fact, the Competitive Cable and Video Service Act states that video service can be provided, and is thusly defined, "without regard to delivery technology, including Internet protocol technology or any other technology." Tenn. Code. Ann. § 7-59-303(19).

19. Defendants' use of wireline facilities located, at least in part, in the public right-of-way, to directly transmit content to their subscribers puts them squarely within the Competitive Cable and Video Service Act.

20. As video service providers using these wireline facilities, Defendants were required to apply for and receive a state-issued certificate of franchise authority ("SICFA") from the Tennessee Public Utility Commission. *See* Tenn. Code Ann. §§ 7-59-304 and 7-59-305.

21. Defendants failed to apply for and receive a state issued certificate of franchise authority and, therefore, are providing video service throughout Tennessee—including in the City of Knoxville—without authorization and in contravention of the Tennessee Code. "A…video service provider shall not provide…video service without a [SICFA]." Tenn. Code Ann. § 7-59-304.

22. A SICFA authorizes video service providers such as Defendants to use public rights-of-way, as long as said video service providers make a quarterly video service provider payment to each municipality and county in which it provides video service. The required video service provider payment is 5% of gross revenues[4] received by the franchise holder from the provision of services in that municipality or county. These include advertising services and commissions for cable and video home shopping services, where applicable. *See* Tenn. Code Ann. § 7-59-306.

23. Defendants were required to obtain a SICFA before providing video service in Knoxville and the other Tennessee municipalities and counties in which they provide their video services. Defendants' failure to obtain a certificate of authority, however, did not relieve Defendants of the obligation to pay a franchise fee of 5% of their gross revenues derived from providing such video service in those counties and municipalities. Nothing in the Competitive Cable and Video Service Act provides that an entity otherwise qualified as a "video service provider" is exempt from this requirement, or from liability in this Court, so long as it refrains from obtaining a SICFA.

24. By failing to obtain the required authorization for providing video service in the City of Knoxville and in other Tennessee municipalities and counties, Defendants have avoided their obligation to pay the franchise fee. Defendants cannot escape liability by arguing they are

---

[4] "Gross revenue" means, with respect to a holder of a state-issued certificate of franchise authority, all revenues received from subscribers in the applicable municipality or unincorporated county area for providing cable or video services, and all revenues received from nonsubscribers in the applicable municipality or unincorporated county area for advertising services and as commissions from home shopping services, as allocated pursuant to subdivision (11)(B); provided, that the advertising or home shopping services are disseminated through cable or video services. Gross revenues shall be determined according to generally accepted accounting principles. Tenn. Code Ann. § 7-59-303(11)(A).

6

not SICFA holders; they were required to apply for and obtain a SICFA, and to then pay 5% of their gross revenues derived from providing video service in the City of Knoxville in the manner in which they did.

25. In sum, Defendants are in violation of § 7-59-306 because they have failed to pay the City of Knoxville and other Tennessee municipalities and counties the required franchise fee of 5% of gross revenues for the right to provide video programming through wireline facilities located, at least in part, in public rights-of-way, without regard to delivery technology, including Internet protocol technology or any other technology, to their customers throughout the State of Tennessee. *See* § 7-59-303(19).

26. Plaintiff, individually and on behalf of other Tennessee municipalities and counties, seeks to require Defendants to abide by the Tennessee Code's Competitive Cable and Video Service Act, and pay the fees they owe to these municipalities and counties.

## **CLASS ACTION ALLEGATIONS**

27. Plaintiff brings this action as a class action pursuant to Rules 23(a), 23(b)(2), and (b)(3) of the Federal Rules of Civil Procedure, on behalf of a class defined as:

> All Tennessee municipalities and counties in which one or more of the Defendants has provided video service (the "Class").

28. Excluded from the Class are Defendants and any of their members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; and the Court staff assigned to this case and their immediate family members. Plaintiff reserves the right to modify or amend the Class definition, as appropriate, during the course of this litigation.

29. This action has been brought and may properly be maintained on behalf of the Class proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

30. **Numerosity—Federal Rule of Civil Procedure 23(a)(1).** The proposed Class is sufficiently numerous that individual joinder of all Class members is impracticable. Indeed, the Class size is believed to be in excess of 430 municipalities and counties. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

31. **Commonality and Predominance—Federal Rules of Civil Procedure 23(a)(2) and 23(b)(3).** This action involves common questions of law and fact, which predominate over any questions affecting only individual Class members, including, without limitation:

   a. Whether Defendants provide video service, as defined by Tenn. Code. Ann. § 7-59-303(19), within Plaintiff's and the other Class members' geographic areas;

   b. Whether Defendants are video service providers, as defined by Tenn. Code. Ann. § 7-59-303(20);

   c. Whether Defendants were required to file an application with the Tennessee Public Utility Commission for a SICFA;

   d. Whether Defendants have failed to pay franchise fees pursuant to Tenn. Code Ann. § 7-59-306;

   e. The appropriate measure of damages to award Plaintiff and the other Class members; and

   f. The appropriate declaratory relief to which Plaintiff and the other Class members are entitled.

32. **Typicality—Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of the other Class members' claims because Plaintiff and each of the other Class members is entitled to video service provider fee payments from Defendants pursuant to Tenn. Code Ann. § 7-59-306, and Defendants have failed to pay Plaintiff and each of the other Class members those video service provider fees. Plaintiff is asserting the same claims and legal theories individually and on behalf of the other Class members.

33. **Adequacy of Representation—Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate Class representative because its interests do not conflict with the interests of the other Class members who they seek to represent, Plaintiff has retained counsel competent and experienced in complex class action litigation, including successfully litigating class action cases similar to this one, where defendants breached statutory obligations, and Plaintiff intends to prosecute this action vigorously. Class members' interests will be fairly and adequately protected by Plaintiff and its counsel.

34. **Declaratory and Injunctive Relief—Federal Rule of Civil Procedure 23(b)(2).** Defendants acted or refused to act on grounds generally applicable to Plaintiff and the other Class members, thereby making appropriate final injunctive relief and/or declaratory relief, as described below, with respect to the Class members.

35. **Superiority—Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CLAIMS ALLEGED

### COUNT I

**VIOLATION OF THE COMPETITIVE CABLE AND VIDEO SERVICES ACT**
**(Tenn. Code Ann. §§ 7-59-301, *et seq.*)**

36. Plaintiff repeats, realleges**,** and incorporates by reference Paragraphs 1-35, as if fully set forth herein.

37. Defendants provide video service, and are video service providers, in Knoxville and each municipality and county comprising the Class. *See* Tenn. Code Ann. § 7-59-303(19)-(20). Defendants derive gross revenues from providing these video services.

38. Defendants are thus required, by statute, to pay each municipality and county in which they provide video service, a video service provider fee of 5% of their gross revenues derived from their operations in that municipality and/or county. *See* Tenn. Code Ann. §7-59-306.

39. Defendants have failed to comply with § 7-59-306 because they have failed to pay Plaintiff and the other Class members 5% of gross revenues, as required.

40. Plaintiff and the other Class members are, therefore, entitled to damages as a result of Defendants' violations of § 7-59-306, along with pre- and post-judgment interest, in an amount to be determined at trial.

## COUNT II

### DECLARATORY JUDGMENT ACT
### (28 U.S.C. §§ 2201, *et seq.*)

41. Plaintiff repeats, realleges, and incorporates by reference Paragraphs 1-40, as if fully set forth herein.

42. This case involves an actual controversy of sufficient immediacy, which is substantial and concrete, touches upon the legal relations of parties with adverse interests, and is subject to specific relief through a decree of conclusive character.

43. Pursuant to 28 U.S.C. §§ 2201-2202, Plaintiff seeks a declaration, and resulting order, from the Court that:

>   a. Each Defendant provides "video service," as that term is defined in the Tennessee Annotated Code. *See* Tenn. Code Ann. § 7-59-303(19);
>
>   b. Each Defendant is a "video service provider," as that term is defined in the Tennessee Annotated Code. *See* Tenn. Code Ann. § 7-59-303(20);

c. Defendants provide video service, and are video service providers, in Knoxville and each municipality and county in the Class. *See* Tenn. Code Ann. § 7-59-303(19)-(20);

d. Defendants were required to apply for a state-issued certificate of franchise authority ("SICFA") from the Tennessee Public Utility Commission. *See* Tenn. Code Ann. §§ 7-59-304 and 7-59-305.

e. Defendants are required to pay Plaintiff and each of the other Class members a video service provider fee of 5% of their gross revenues derived from their operations in each such municipality and/or county, pursuant to Tenn. Code Ann. § 7-59-306; and

f. Defendants have failed to comply with Tenn. Code Ann. § 7-59-306, because they have each failed to pay to Plaintiff and each of the other Class members the required fee of 5% of gross revenues.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other Class members, respectfully requests that the Court enter judgment in its favor and against Defendants as follows:

a. Enter an Order certifying the above-defined Class and designating Plaintiff as Class Representative, and Plaintiff's counsel as Class Counsel;

b. Award all monetary relief to which Plaintiff and the other Class members are entitled, including as set forth in Count I above;

c. Grant declaratory relief as set forth in Count II above, including ordering Defendants to cure their non-compliance with Tenn. Code Ann. § 7-59-306;

d. Award pre- and post-judgment interest;

e. Award reasonable attorneys' fees and costs to Plaintiff's counsel; and

f. Grant such further and other relief as this Court deems appropriate.

**JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury on all causes of action so triable.

Dated: December 22, 2020

Respectfully submitted,

*/s/ Benjamin A. Gastel*
J. Gerard Stranch, IV, Esq. (BPR #23045)
Benjamin A Gastel, Esq. (BPR #28699)
**BRANSTETTER, STRANCH & JENNINGS, PLLC**
223 Rosa L Parks Avenue, Suite 200
Nashville, Tennessee 37203
Tel: 615-254-8801
gerards@bsjfirm.com
beng@bjsfirm.com

Adam J. Levitt*
Mark Hamill*
Brittany Hartwig*
**DiCELLO LEVITT GUTZLER LLC**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Tel: 312-314-7900
alevitt@dicellolevitt.com
mhamill@dicellolevitt.com
bhartwig@dicellolevitt.com

Austin Tighe*
Michael Angelovich*
**NIX PATTERSON, LLP**
3600 North Capital of Texas Highway
Building B, Suite 350
Austin, Texas 78746
Tel: 512-328-5333
atighe@nixlaw.com
mangelovich@nixlaw.com

Peter Schneider*
**SCHNEIDER WALLACE COTTRELL KONECKY, LLP**
3700 Buffalo Speedway, Ste. 1100
Houston, Texas 77098
Tel: 713-338-2560
pschneider@schneiderwallace.com

Todd M. Schneider*
Jason H. Kim*
Kyle G. Bates*
**SCHNEIDER WALLACE COTTRELL KONECKY, LLP**
2000 Powell Street, Suite 1400
Emeryville, California 94608
Tel: 415-421-7100
tschneider@schneiderwallace.com
jkim@schneiderwallace.com
kbates@schneiderwallace.com

*Counsel for Plaintiff and the Proposed Class*


\* *Pro Hac Vice* applications to be filed